**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

LOCKTON COMPANIES, LLC, )
LOCKTON PARTNERS, LLC, THE )
TEXAS SERIES OF LOCKTON )
COMPANIES, LLC, fka THE DALLAS )
SERIES OF LOCKTON COMPANIES, )
LLC, and THE LOCKTON-DUNNING )
SERIES OF LOCKTON COMPANIES, LLC )
)
      Plaintiffs, )
)
      vs. )
)
WILLIS TOWERS WATSON US LLC, )
WILLIS NORTH AMERICA, INC., WILLIS )
TOWERS WATSON INSURANCE )
SERVICES WEST, INC., KENNETH )
GOULD, and FRANK SCARDINO, )
      Defendants. )

Case No. 4:23-cv-00717-DGK

JURY TRIAL REQUESTED

## FIRST AMENDED COMPLAINT

1.    Lockton files this lawsuit to prevent two long-standing owners in several Lockton entities from flagrantly breaching their contractual and fiduciary obligations by diverting corporate clients and trade secrets and proprietary information to Willis Towers Watson US LLC, Willis North America, Inc., and Willis Towers Watson Insurance Services West, Inc. (sometimes referred to collectively as "Willis"), a competing insurance brokerage and consulting firm. Lockton brings this action to protect Lockton's Confidential Information, trade secrets, and business relationships, and to enforce the contractual obligations Producer Members Kenneth Gould ("Gould") and Frank Scardino ("Scardino") undertook as part owners of Lockton's business, including a thirty-day notice of termination requirement and non-disclosure and non-solicitation obligations.[1]

_____
[1]    This Complaint refers to Lockton Companies, LLC ("Lockton Companies"), Lockton Partners, LLC ("Lockton Partners"), the Texas Series of Lockton Companies, LLC, fka Dallas

2. On October 4, 2023, instead of showing up to Lockton's annual Global Growth Forum as expected, Gould and Scardino—in an obviously coordinated and self-serving effort— abruptly began working for Willis. Gould and Scardino notified Lockton that their terminations were "effective immediately." .

3. Gould and Scardino are not employees of Lockton. They are owners and Producer Members of Lockton, and Scardino is a Producer Partner, holding one of the most elite roles for producers in Lockton. Both Gould and Scardino have reaped the benefits of their ownership interests to the tune of millions of dollars in personal wealth. In addition to the personal benefits, in their positions as owners, Producer Members and, in Scardino's case, Producer Partner, they have been entitled to and trusted with broad access to Lockton's people, clients, and its most competitively sensitive information. With this access comes unconditional fiduciary duties of loyalty and care that they owe Lockton yet have chosen to disregard.

4. Despite their promises in multiple agreements, Defendants failed to provide the required 30 days' notice of termination that Producer Members must provide under their member agreements with Lockton and immediately joined Lockton's competitor, Willis. Since then, Defendants have made it clear they have no intention of honoring any of their duties or obligations to Lockton. Lockton brings this action to protect its Confidential Information, trade secrets, and business relationships, and to enforce the contractual obligations Producer Members Gould and Scardino undertook as owners of Lockton's business, including a 30 day notice of termination requirement and non-disclosure and non-solicitation obligations, to prevent Defendants from misusing Lockton's Confidential Information and trade secrets to compete unfairly, and to enjoin Defendants' ongoing violations of same.

_____

Series of Lockton Companies, LLC ("the Texas Series"), and the Lockton-Dunning Series of Companies, LLC ("the Lockton-Dunning Series") collectively as "Lockton."

5.      Gould is subject to contractual restrictive covenants as a Producer Member, and Scardino is subject to contractual restrictive covenants as both Producer Member and Producer Partner. In exchange for their equity interests in Lockton, Defendants signed member agreements containing provisions prohibiting the solicitation of Lockton clients during their membership and for a period of two years following the termination of their membership interests. When Scardino became a Producer Partner, in exchange for his partnership interest in Lockton Partners, his non-solicitation provisions were extended to a four-year period following the termination of his partnership. Defendants agreed that they would not disclose Lockton's Confidential Information (defined below). Defendants also agreed that, as part owners of Lockton's business, they would only terminate their ownership interest in Lockton upon 30 days' written notice to Lockton.

6.      Upon receiving Gould's termination notice, Lockton reminded Gould of his 30-day notice obligation as a Producer Member and his continuing contractual obligations and fiduciary duties and requested that Gould comply with the same, so that Lockton may appropriately wind down his ownership interest. Gould to date has refused to provide the requested confirmations.

7.      Although Scardino also apparently sent a termination notice on October 4, 2023, he did so in a fashion that appears designed to ensure Lockton would be delayed in receiving it. The termination notice was sent from an unfamiliar Gmail account and without any subject line which, because of Lockton's spam screening system, was certain to be quarantined from receipt. And, indeed it was.  Without waiting for any confirmation of receipt, or otherwise having the courtesy to call the individuals to whom he resigned, Scardino immediately began working for Willis, causing Lockton to learn of Scardino's departure from Willis's announcement and the trade presses. Scardino is well aware that unfamiliar email addresses, including emails sent from Gmail accounts, are almost always quarantined by Lockton's email security program.  Indeed, Lockton

3

did not discover the notice until three days later, when Gould's counsel for the first time reached out to indicate he was also representing Scardino and stated that Scardino had indeed sent a termination notice.

8. Scardino and Gould have violated their contractual and fiduciary duties to Lockton by attempting to effectuate the early termination of their membership in Lockton and starting work for Willis while still Lockton Producer Members and a Producer Partner (Scardino).

9. In addition, on information and belief, Defendants have violated their contractual and fiduciary duties to Lockton by using the confidential information they acquired as Lockton Producer Members to solicit Lockton employees. For example, the day following Defendants' resignations, two Texas Series associates, both of whom worked closely with Scardino, also resigned from Lockton.

10. In addition, on information and belief, Defendants have misappropriated Lockton's Confidential Information for use at Willis with the intent to solicit, or attempt to solicit, Lockton customers and compete unfairly against Lockton. For example, in the weeks leading up to his abrupt departure, Gould brought a Willis employee to a meeting with a Lockton client.

11. Lockton seeks, among other remedies, injunctive relief prohibiting Defendants from (i) continuing to violate their fiduciary and contractual obligations to Lockton while maintaining an ownership interest in Lockton as Producer Members and a Producer Partner (Scardino); (ii) using the confidential information they acquired as Lockton Producer Members to solicit, or attempt to solicit, Lockton employees, until these restrictions end per their contractual agreements; (iii) soliciting, accepting, or servicing Lockton's restricted customer accounts, or from wrongfully aiding and/or abetting these activities, until these restrictions end per their contractual agreements; (iv) wrongfully disclosing, using, or taking Lockton's Confidential Information and

4

trade secrets, including, but not limited to, information about Lockton's customer accounts, or from wrongfully aiding and/or abetting these activities; (v) interfering with Lockton's contracts and business expectancies, as further alleged herein; and (vi) failing to comply with the 30 days' notice-of-termination provisions in their member agreements. Lockton also seeks a declaration of the parties' rights and obligations under their agreements; and seeks to recover damages for those quantifiable injuries that Lockton has suffered to date.

## THE PARTIES

12. The Texas Series and the Lockton-Dunning Series are series of Lockton Companies, LLC, a Missouri series limited liability company organized under the Missouri Limited Liability Company Act, Mo. Rev. Stat. §§ 347.010, *et seq.*, specifically Mo. Rev. Stat. § 347.186. The Texas Series and Lockton-Dunning Series operate brokerage offices and transact business in Texas among other locations.

13. Lockton Partners is a Missouri Limited Liability Company organized and operating under the laws of the State of Missouri. Lockton Partners ultimately holds the operating interests in all Lockton entities that carry on insurance intermediary business on a global basis.

14. Gould and Scardino are residents of Texas and commercial insurance brokerage professionals. Gould is an owner and Producer Member of the Series; Scardino is an owner and Producer Member of the Series, and an owner and Producer Partner of Lockton Partners. Scardino is also a former office President in the Texas Series.

15. Upon information and belief, Willis Towers Watson US LLC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Arlington, Virginia.

16. Willis Towers Watson US LLC is authorized to do business in the State of Missouri.

17. Upon information and belief, Willis North America, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

18. Willis North America, Inc. is authorized to do business in the State of Missouri.

19. Upon information and belief, Willis Towers Watson Insurance Services West, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California.

20. Willis Towers Watson Insurance Services West, Inc. is authorized to do business in the State of Missouri.

21. Upon information and belief, Willis currently employs Gould and Scardino.

22. Upon information and belief, Willis does business in the State of Missouri, maintains offices, employees, and personnel in the State of Missouri, services clients located in the State of Missouri, and employs insurance brokers licensed in the State of Missouri.

## JURISDICTION AND VENUE

23. This action arises under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as well as under Missouri law. The Court has subject-matter jurisdiction over Lockton's federal cause of action (Count I) pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1367.

24. By signing and accepting the terms of their respective binding agreements, not to mention the benefits attendant thereto, Defendants expressly agreed with Lockton that jurisdiction is proper in this Court and they are therefore subject to the Court's jurisdiction. There is a reasonable basis for the parties' choice of forum given the negotiation of the agreements in Missouri, Lockton's substantial contacts with Missouri, and the motivation to resolve disputes regarding the parties' rights and interests in the agreements on a uniform basis in accordance with

6

Missouri's series limited liability company law. Additionally, Lockton, and thus Gould as a Producer Member, and Scardino as a Producer Member and a Producer Partner of Lockton, receive administrative, regulatory/compliance, and customer-related support and information from Missouri, and utilize computer servers located in Missouri.

25. Because Gould and Scardino have entered into contracts in Missouri, transacted business in Missouri, and/or committed tortious acts in Missouri, and have minimum contacts with the State of Missouri, they are subject to the jurisdiction of this Court.

26. Willis is licensed to transact business in the State of Missouri; maintains offices and personnel in the State of Missouri; upon information and belief, provides insurance brokerages services both from its Missouri-based offices and to clients and customers located in Missouri; and upon information and belief, committed tortious acts, alleged more fully herein, directed to cause harm to Lockton in the State of Missouri.

27. Because Willis has transacted business in Missouri and/or committed tortious acts in Missouri, and has minimum contacts with the State of Missouri, it is subject to the jurisdiction of this Court.

28. Venue is proper in this Court because Defendants expressly agreed in writing that any action relating to their respective written agreements with Lockton must be brought exclusively in either state court or federal court in Jackson County, Missouri. Venue is also proper as to Lockton's claims against Defendants because Lockton's contract-based claims against Defendants arise out of the same nucleus of operative facts as Lockton's other claims against Defendants. Therefore, judicial economy, fairness, and convenience require the claims be heard in one proceeding before this Court.

7

29.     Venue is further proper under 28 U.S.C. § 1391(b) as there is no judicial district in which all Defendants reside; a substantial part of the events or omissions giving rise to the claim occurred in or were directed at Kansas City, Missouri, where Lockton is located; and/or all Defendants are subject to the personal jurisdiction of this Court, as alleged herein.

## FACTUAL ALLEGATIONS

## I.     THE SERIES

30.     The Texas Series and the Lockton-Dunning Series (collectively "the Series"), along with the other series of the Company and its affiliates, make up one of the world's preeminent insurance brokerage firms, offering insurance, risk management, employee benefits, and retirement services, across a number of economic sectors, including the real estate and construction, technology, telecommunications, healthcare, and financial services sectors. The Series and its affiliates operate globally, through a number of affiliates.

31.     On May 1, 2016, the Company reorganized with the approval of the Series Producer Members, including Defendants. Each Producer Member of the Series entered into an individual member agreement with the Series and thereby agreed, along with all Producer Members of the other series, to be bound by the "Second Amended and Restated Operating Agreement of Lockton Companies, LLC and each of its Series," dated May 1, 2016, which applies to the Company, all of its series, and all Producer Members.

32.     On January 1, 2018, the Company amended and restated its operating agreement to clarify minor ambiguities by executing the Third Amended and Restated Operating Agreement of Lockton Companies, LLC and Each of its Series (the "Series Operating Agreement"). Due to the nature of the amendment, approval of each Series Producer Member was not required. Each Producer Member of the Series, along with all Producer Members of the other series, are bound

8

by the Series Operating Agreement, which applies to the Company, all of its series, and all Producer Members.

33. Each Producer Member of the Series holds an ownership interest in the Series. Specifically, each Producer Member of each series makes a Capital Contribution (as defined in the Member Agreement) to and thereby purchases and owns one Producer Unit of the respective series with which he or she is affiliated, which confers and represents the Producer Member's equity ownership interest in the respective series with which he or she is affiliated and entitles the Producer Member to receive, among other benefits of ownership, producer profit return (profit distribution) from his or her series and a Buy-Sell Price upon termination of his or her membership.

34. In addition to its organization as a Missouri series limited liability company, the Series has numerous connections to Missouri in its day-to-day operations. The Series has many associates/employees and Producer Members who are licensed as insurance brokers in the State of Missouri. The Series and its Producer Members also pay entity and individual taxes and licensing fees to the State of Missouri.

## II. LOCKTON PARTNERS

35. Lockton Partners was formed under the Missouri Limited Liability Company Act, Mo. Rev. Stat. §§ 347.010, et seq., and maintains its headquarters in Kansas City, Missouri.

36. Lockton Partners ultimately holds the operating interests in all Lockton entities that carry on insurance intermediary business on a global basis, including the Series.

37. A Producer Member becomes a Producer Partner solely by invitation from Lockton Partners for a demonstrated history of exceptional production results and performance as a Producer Member that Lockton Partners determines is likely to continue.

38. Although both Gould and Scardino were offered the opportunity to become a Producer Partner, only Scardino became a Producer Partner by entering into Partner Agreements and agreeing in writing to be bound by the Lockton Partners Operating Agreement.

39. Producer Partners, like Scardino, make an initial Capital Contribution (as defined in the Partner Agreement) and thereby acquire a Partner Unit consisting of an equity ownership interest in Lockton Partners.

40. Producer Partners are entitled to a share of the value of Lockton Partners, denominated in the form of "Class B Shares" that annually are attributed to a Producer Partner's Partner Unit and measure the Producer Partner's share in the value of Lockton Partners as determined by a formula based on global consolidated EBITDA from Lockton's global operations.

41. Producer Partners are also entitled to the opportunity for the value of the Partner Unit to increase significantly over time and thus realize a substantial capital gain from the future sale of the Partner Unit, the "Buy-Sell Price" (as defined in the Lockton Partners Operating Agreement).

42. Producer Partners are entitled to the opportunity to derive significant tax benefits from their ownership and sale of their Partner Unit in Lockton Partners.

## III. DEFENDANTS

43. Gould is a commercial insurance brokerage professional and an owner and Producer Member of Lockton.

44. At all times during Gould's association with Lockton, he has been and remains, a sophisticated businessman with extensive experience in the business world, including, among other things, years of experience and specialized training in the commercial insurance brokerage industry.

45.     Scardino is a commercial insurance brokerage professional and an owner, Producer Member, and Producer Partner of Lockton.

46.     At all times during Scardino's association with Lockton, he has been and remains, a sophisticated businessman with extensive experience in the business world, including, among other things, years of experience and specialized training in the commercial insurance brokerage industry.

47.     By virtue of their longstanding relationships with Lockton, Gould and Scardino have developed business and have been personally enriched by Lockton's investments in their careers.

48.     During Defendants' time at Lockton, the company has invested significantly in client service teams and the resources used by Defendants to service Customer Accounts.

49.     Gould and Scardino had access to important Confidential Information about Lockton's customers, including, without limitation, the customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers.

50.     Defendants' access to Lockton's trade secrets and other Confidential Information well positions them to subvert Lockton's interests, engage in unfair competition, and convince customers to move business away from Lockton and colleagues to leave Lockton.

## IV.     GOULD AND SCARDINO'S AGREEMENTS WITH LOCKTON

### A.     The Series Member Agreement

51.     Gould and Scardino are party to the Series Member Agreements.

52.     Section 4.3 of the Series Member Agreements explicitly prohibits Gould and Scardino from disclosing or misusing the Series' Confidential Information. In pertinent part, that Section states:

> While Member is a Producer Member of the Series and at all times thereafter, and except with the prior written consent of the applicable Lockton Entity or as is reasonably necessary for Member to perform Member's responsibilities as a Producer Member of the Series, ***Member shall not, directly or indirectly, (a) disclose, or attempt to disclose, Confidential Information to anyone other than the members, officers or authorized employees, attorneys or other agents and fiduciaries of the applicable Lockton Entity, (b) use, or attempt to use, Confidential Information for any unauthorized purpose, or (c) acquire, access, duplicate, copy, remove, download, upload, save, email, transmit or otherwise take, or attempt to do any of the foregoing with respect to, Confidential Information for any unauthorized purpose***. (emphasis added)

53.     Section 5.3 of the Series Member Agreements explicitly prohibits Gould and Scardino from soliciting employees and members of Lockton to resign from Lockton for a period of two years after the termination of their membership.

54.     Section 5.4 of the Series Member Agreements explicitly prohibits Gould and Scardino from soliciting certain Series' customers during their membership with the Series and for a period of two years after the termination of their membership. In pertinent part, the Series Member Agreement states:

> ***Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit, induce, persuade or encourage, or attempt to solicit, induce, persuade or encourage, any of the Customer Accounts described below, if any such Customer Account qualified as a Customer Account within the six (6) month period immediately preceding the sale of Member's Producer Unit, to reduce, terminate or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series***, the Other Series or any Affiliate. Member shall not, directly or indirectly, for himself or on behalf of any other Person, (i) accept, service, or work on, or attempt or threaten to accept, service or work on, any such competitive business from any of the Customer Accounts that Member may not solicit, or (ii) in any way do business with any of the Customer Accounts that Member may not solicit to the extent such business is the same or substantially

similar to that provided by the Series, the Other Series or any Affiliate. The Customer Accounts to which this restriction applies are:

(1) any of the Customer Accounts of the Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and, . . .

(3) any of the Customer Accounts of the Other Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and, . . .

(5) any of the Customer Accounts of any Affiliate (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact.  (emphasis added)

55. Gould and Scardino also agreed that the above provisions of the Series Member Agreements are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of the Series, and, as applicable, the Other Series, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts; maintaining the confidentiality of Confidential Information; and other interests described in Section 5.1 of the Series Member Agreements.  Series Member Agreements, §5.5.

56. Gould and Scardino further agreed that their breach of the above-discussed provisions of the Series Member Agreements "will result in irreparable harm and continuing damage to the Series" and entitles the Series to injunctive relief.  Series Member Agreements, §7.1.

57.     Gould and Scardino agreed that Missouri law would govern the Series Member Agreements and that any related disputes would be resolved in Missouri courts. Specifically, Section 7.7(a) of the Series Member Agreements provides that:

> This Agreement and all disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series shall be subject to, governed by, and construed in accordance with the laws of the State of Missouri without reference to choice of laws, irrespective of the fact that one or both of the parties now is or may become a resident of a different state.

Section 7.7(a) further provides that:

> Any action involving any disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series, including, without limitation, any disputes, claims or issues arising out of or relating to the rights and interests of the Other Series, Affiliates and Lockton Entities as set forth herein, shall be brought exclusively in any Federal Court in Kansas City, Missouri or in the Circuit Court of Jackson County, Missouri, . . . [s]uch courts shall have exclusive jurisdiction over these matters, and Member hereby agrees to be subject to the personal jurisdiction of such courts.

**B.      The Operating Agreements**

58.     Gould and Scardino are also bound by the Series Operating Agreement, and Scardino is also bound by the First Amended and Restated Operating Agreement of Lockton Partners, LLC.

59.     As part owners of Lockton's business, Gould and Scardino are subject to, among other things, the termination provision contained in the Series Operating Agreement, which provides the only methods by which a Producer Member can terminate their membership. The Operating Agreement provides the following voluntary termination provision by members:

> Any Producer Member may be terminated as a Member:
>
> (a) by such Series Member on thirty (30) days' written notice to the Series;
> . . . .

Series Operating Agreement, § 5.10(a).

60. The purpose of the 30-day notice requirement is to facilitate a smooth transition of services for the benefit of Lockton upon a Producer Member's or Producer Partner's termination of their ownership interest, to protect Lockton's Confidential Information and relationships with customers, and to prevent a coordinated effort of Producer Members or Producer Partners to resign immediately, affiliate with a competitor of Lockton, use their knowledge as owners to recruit Lockton associates to follow them to a competitor of Lockton, and utilize their knowledge as owners of Lockton to competitively disadvantage the Series (in other words, to prevent precisely what has occurred here). Producer Members and Producer Partners also benefit from the 30-day notice period: during that time, they continue to receive distributive draws, producer profit return, and various benefits.

61. The Series Operating Agreement acknowledges that Defendants are subject to the nondisclosure, non-solicitation, and related obligations contained in the Member Agreements.

62. Further, Section 5.5 of the Series Operating Agreement provides that Customer Accounts are the property of the respective series and that no Producer Member has any right, title, or interest in such Customer Accounts or in any records pertaining to such Customer Accounts.

### C. The Lockton Partners Partner Agreement

63. Scardino is also a party to the Lockton Partners Partner Agreement. The Partner Agreement contains restrictive covenant provisions, incorporated by reference from the Member Agreement, which prohibit Scardino from, among other things, directly or indirectly soliciting or attempting to solicit the associates/employees, members and consultants of the Series, Other Series, and Affiliates (as defined in the Member Agreement) to terminate their affiliation with the Series, Other Series and any Affiliate while Scardino is a Producer Partner and for four (4) years after the sale of his Series Producer Units.

64. Similarly, Scardino's Partner Agreement also contains restrictive covenant provisions, incorporated by reference from the Member Agreement, which prohibit him from, among other things, directly or indirectly soliciting or attempting to solicit Customer Accounts of the Series, Other Series and Affiliates (as defined in the Member Agreement) for or on behalf of any competitor, such as Willis, while he is a Producer Partner and for four (4) years after the sale of his Series Producer Unit.

65. Further, Scardino is prohibited by the Partner Agreement from directly or indirectly, on behalf of himself or others, accepting, servicing, or doing business with any of the Customer Accounts he is prohibited from soliciting.

66. Also, the Partner Agreement contains non-disclosure provisions, incorporated by reference from the Member Agreement, which prohibit Scardino, while he is a Producer Partner and thereafter, from, among other things, disclosing, using or taking for any unauthorized purpose any Confidential Information of the Series and other Lockton Entities (as defined in the Member Agreement), including, but not limited to, information related to Customer Accounts and trade secrets.

67. All Producer Partners agree to these restrictive covenants to prevent a departing Producer Partner from unfairly soliciting Customer Accounts of each respective Series, the Other Series and any Affiliate for the benefit of the joint enterprise of the Producer Partners. The Partner Agreement restrictive covenants both bind and benefit all Producer Partners by protecting the goodwill of their joint enterprise through membership in Lockton Partners and their resulting common equity interests in the appreciation in the value of Lockton's global operations. A departing Producer Partner who successfully solicits Customer Accounts in violation of the Partner Agreement directly harms all remaining Producer Partners by negatively impacting the value of a

16

Producer Partner's Partner Unit and injuring the competitive position of Lockton Partners as a whole.

68. For the reasons set forth herein above, these restrictive covenants are essential to the protection of Confidential Information (as defined in the Member Agreements), specifically information related to Customer Accounts and trade secrets, goodwill, and other protectable business interests. Given his status as an equity owner and a Producer Partner, it would cause great and irreparable harm to Plaintiffs to allow Scardino to act or attempt to act in violation of those restrictive covenants.

69. Scardino agreed any breach of the covenants incorporated in the Partner Agreement would result in irreparable harm to the Series, Other Series, Affiliates and other Lockton Entities, and entitles Plaintiffs to the injunctive relief they seek herein.

70. Scardino further acknowledged the covenants in the Partner Agreement are no greater than reasonably necessary for the protection of the Confidential Information, goodwill and protectable business interests of the Series, Other Series and Affiliates, and the Confidential Information of the other Lockton Entities, and are reasonable in their scope.

71. To the extent the restrictive covenants incorporated in the Partner Agreement are determined to be unreasonable, Scardino agreed to request that the Court modify and enforce the restrictive covenants to the fullest extent available under the applicable law.

72. Scardino has expressly recognized that the Partner Agreement, and the covenants incorporated therein, are supported by adequate consideration.

73. Scardino also agreed that to the extent Plaintiffs prevail in a dispute like this related to the Partner Agreement, Plaintiffs are entitled to an award of attorneys' fees in addition to any other remedies available to them.

## V. IRREPARABLE HARM TO LOCKTON

74. Willis and Lockton both compete in the market for insurance brokerage and consulting services addressing a variety of industries and risks, including real estate and construction.

75. Lockton has an established reputation as a top global expert and industry leader in the commercial insurance brokerage business, including in Texas.

76. If Defendants are permitted to use Lockton's trade secrets and Confidential Information to compete against Lockton, Lockton will be irreparably harmed.

77. If Defendants are permitted to violate their obligation to provide the 30 days' notice of termination that Producer Members must provide under their member agreements with Lockton, Lockton will be irreparably harmed.

78. Lockton has expended considerable time, effort, and resources recruiting, training, and cultivating its relationships with Lockton employees to work closely with its Producer Members and Producer Partners, like Gould and Scardino.

79. Lockton has expended considerable time, effort, and resources developing and marketing its products and services and cultivating its relationships with Customer Accounts and prospective customers.

80. Defendants had and have access to valuable Confidential Information and trade secrets concerning Customer Accounts that they are obligated to use solely for the benefit of Lockton or its affiliates.

81. Gould notified Lockton of his intent to resign on Tuesday, October 4, 2023. While Scardino also emailed Lockton his resignation on October 4, 2023, due the presumably intentional way Scardino sent the email (from his personal Gmail address, with no subject line, and not

18

confirming receipt), the email was quarantined by Lockton's email security program and Lockton did not become aware of Scardino's notice of resignation until October 7, 2023. Scardino is currently working for Willis as the North American Strategic Sales Leader and leader of the Dallas Market. Gould is currently working for Willis as the Strategic Client Engagement Leader.

82. With this action, Lockton seeks to enjoin Defendants from further misappropriation of its valuable relationships with its customers and Confidential Information and to enforce their 30 days' notice obligation. Lockton also seeks to recover damages that it has suffered as a result of the unlawful conduct of Defendants and those acting in concert with them.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS (VIOLATIONS OF THE MISSOURI UNIFORM TRADE SECRETS ACT (MO. REV. STAT. § 417.450 *ET SEQ.*) AND DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 *ET SEQ.*)) AGAINST ALL DEFENDANTS**

83. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

84. Lockton's Confidential Information,

> includes, without limitation, trade secrets, non-public proprietary information, formulas, patterns, compilations, programs, devices, methods, techniques, or processes; sales and other business methods or policies; prices or price formulas; procedures; the identity of and information concerning former or current Customer Accounts of the Series, the Other Series and/or any Affiliate, including but not limited to Customer Account needs and preferences, levels of satisfaction and the terms of engagement and transactions between the Series, the Other Series or Affiliates and/or its or his Customer Accounts; revenues, expenses, budgeting, finances and other financial information; computer systems, programs and software . . .; business, marketing and development strategies and plans; the Series; Other Series and Affiliate member and/or Lockton Entity personnel information, including without limitation, compensation and benefit information; internal operational information related to the structure of any of the Lockton Entities, including without limitation, the Operating Agreement[.]

Series Member Agreements, §4.1(b).

85. Lockton's Confidential Information has actual and potential economic value and is subject to efforts by Lockton to keep such information confidential and secret.

86. For example, Lockton possesses Confidential Information about its Customer Accounts' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such Customer Accounts. This information has independent economic value, is not generally available to competitors, and is protected by Lockton as a trade secret.

87. Lockton's Confidential Information constitutes trade secrets.

88. Lockton employs reasonable measures to ensure that its Confidential Information remains secret, including by entering into agreements that obligate those with access to ensure that its Confidential Information is protected.

89. In their capacity as Producer Members and Producer Partner (Scardino) of Lockton, Defendants have access to Confidential Information from Lockton.

90. Lockton's confidential and proprietary information is given to Defendants pursuant to express agreements that the secrecy of the information will be maintained and that the information is to be kept confidential.

91. On information and belief, Defendants knowingly, and with an evil motive or reckless indifference to the rights of Lockton, misappropriated Lockton's Confidential Information in recent weeks, despite planning to depart Lockton, in order to use such Confidential Information on behalf of Willis.

92. On information and belief, Defendants are using, or intend to use, this Confidential Information to solicit business from Lockton's current and prospective Customer Accounts to depart Lockton and join or do business with Willis, without Lockton's consent.

93. Gould began diverting Lockton's Confidential Information and trade secrets while planning to work for Willis, including inviting a Willis employee to an outing with a Lockton client while he was still an equity owner in Lockton.

94. Further, on information and belief, on the same day that he resigned, Gould began using Lockton's Confidential Information and trade secrets to contact Lockton clients to induce their movement to Willis.

95. Upon information and belief, Gould and Scardino have provided certain devices that may contain Lockton's Confidential Information to their attorney to maintain possession of; however, this is only one step of many steps necessary to protect Lockton's Confidential Information from unauthorized disclosure and misuse.

96. Defendants have, and will continue, to leverage their knowledge of Lockton's Confidential Information for Defendants' benefit in their new roles with Willis—regardless of whether their personal devices are in possession of their attorneys.

97. Defendants' misappropriation of Lockton's Confidential Information has caused and, unless enjoined, will continue to cause damages and irreparable harm to Lockton.

**COUNT II**
**BREACH OF CONTRACT**
**(MEMBER AGREEMENTS, PARTNER AGREEMENTS, AND OPERATING AGREEMENTS) AGAINST GOULD AND SCARDINO**

98. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

21

99.     Lockton and Defendants entered into their respectively valid contracts for the purpose of establishing and describing the parties' relative rights and obligations with respect to Defendants' memberships in Lockton and post-membership conduct.

100.    The Agreements were supported by mutual promises and valuable consideration.

101.    Lockton has complied with and performed all obligations under the Agreements, at great benefit to the Defendants.

102.    The Operating Agreements require Producer Members, as owners, to provide 30 days' written notice of the termination of his or her membership in Lockton.

103.    The Member Agreements (i) prohibit Defendants from disclosing or misusing Lockton's Confidential Information; (ii) prohibit Defendants from using the confidential information they acquired as Lockton Producer Members to solicit, recruit, hire, or attempting to solicit, recruit, or persuade Lockton employees to resign from Lockton; (iii) prohibit Defendants from soliciting, or servicing or doing business with, certain Customer Accounts during their membership with the Series and for a period of two years after; and (iv) require Defendants to return any Confidential Information immediately upon termination.

104.    As a business owner, the Partner Agreement also prohibits Scardino from (i) disclosing information about Customer Accounts and disclosing other Confidential Information; (ii) soliciting, or attempting to solicit, directly or indirectly, the Series' Customer Accounts to move their business; and (iii) accepting or servicing the Series' Customer Accounts who have moved their business.

105.    The Partner Agreement also extends Scardino's non-solicitation provisions to a four-year period following the termination of his partnership.

22

106. Defendants have breached and continue to materially breach the express terms of the Operating Agreements and Member Agreements in the following manner:

(a) Failing to provide 30 days' written notice of termination of their membership in the Series;

(b) On information and belief, using information they gained by virtue of their status as owners to solicit, recruit, or encourage Lockton employees to resign from Lockton;

(c) On information and belief, taking and using Lockton's Confidential Information on behalf of Willis and failing to return that Confidential Information to Lockton;

(d) On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Lockton to Willis.

107. As a direct and proximate result of Defendants' conduct in material breach of the Agreements, Lockton has suffered and will continue to suffer substantial damage and irreparable harm.

**COUNT III**
**TORTIOUS INTERFERENCE WITH PLAINTIFF'S PROSPECTIVE ECONOMIC ADVANTAGE/PROSPECTIVE BUSINESS RELATIONSHIPS AGAINST ALL DEFENDANTS**

108. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

109. During all relevant times, Lockton was continuously engaged in numerous discussions with current customers about potential future business opportunities. During all relevant times, Lockton was also in active discussions with potential customers to solicit their business. Given Lockton's time and effort with respect to this business development, as well as Lockton's reputation in the industry, Lockton was reasonably likely to secure these business opportunities.

110. Upon information and belief, Defendants, acting individually and/or in concert with others, have, in a willful, wanton, or malicious manner, intentionally interfered with Lockton's prospective business relationships by targeting and recruiting Lockton's Customer Accounts and by aiding, inducing, and/or participating in the solicitation of Lockton's Customer Accounts.

111. Defendants' intentional interference is the proximate cause of Lockton suffering an enhanced risk of loss of customer relationships that Lockton spent significant time and energy developing. But for Defendants' interference, Lockton has a reasonable expectation of maintaining its existing relationships during the terms of non-solicitation provisions set forth in the relevant agreements with respect to their customers.

112. As a direct and proximate result of Defendants' intentional interference, Lockton has suffered and will continue to suffer substantial damage and irreparable harm.

**COUNT IV**
**BREACH OF FIDUCIARY DUTIES AND/OR DUTIES OF LOYALTY AGAINST GOULD AND SCARDINO**

113. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

114. Pursuant to the Agreements, applicable Missouri law, and/or—as applicable—as owners, officers, Producer Members, and Producer Partner (Scardino) of Lockton, Defendants owe fiduciary duties and/or duties of loyalty to Lockton and have owed such duties at all times that they have been in their respective roles. Specifically, Defendants agreed to, among other things, "devote full time and attention to the Business of [Lockton] . . . and do all things as may be reasonably directed by appropriate officers of [Lockton]." Operating Agreements § 5.3.

115. Defendants have breached their fiduciary duties and/or duties of loyalty owed to the Pacific Series in the following manner:

(a)     Failing to provide 30 days' written notice of termination of membership in the Series and beginning work at Willis, a competitor to Lockton, while still working for Lockton;

(b)     On information and belief, using Lockton's Confidential Information to solicit, recruit, or encourage Lockton employees to resign from Lockton;

(c)     On information and belief, taking Lockton's Confidential Information for use on behalf of Willis and failing to return that Confidential Information;

(d)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Lockton to Willis.

116.    As a direct and proximate result of Defendants' conduct in material breach of their fiduciary duties and/or duties of loyalty owed to Lockton, Lockton has suffered and will continue to suffer substantial damage and irreparable harm.

117.    Defendants' actions in breach of their fiduciary duties and/or duties of loyalty owed to Lockton and resulting in substantial damage and irreparable harm to Lockton were taken maliciously and were the result of Defendants' willful misconduct.

## COUNT V
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

118.    Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

119.    Upon information and belief, Defendants discussed, agreed, or had an understanding to engage in unlawful conduct to facilitate and cause Gould and Scardino's violations of their agreements with Lockton, as set forth herein.

120.    Upon information and belief, Defendants discussed, agreed, or had an understanding to engage in unlawful conduct to facilitate and cause Gould and Scardino to use the

25

confidential information they acquired as Lockton Producer Members to solicit, induce, or encourage Lockton employees to resign from Lockton.

121. Upon information and belief, Defendants discussed, agreed, or had an understanding to engage in unlawful conduct to facilitate and cause the tortious interference with Lockton's clients, as set forth herein.

122. Defendants acted, as described herein, with a unity of purpose, a common design and after a meeting of the minds.

123. Defendants' actions, as described herein, were committed in furtherance of their conspiracy to cause Gould and Scardino to violate their Agreements with Lockton and tortiously interfere with Lockton's current and prospective client relationships.

124. As a direct and proximate result of Defendants' agreement or understanding to commit the unlawful and tortious acts described herein, Lockton has sustained and continues to suffer damage.

## COUNT VI
## UNFAIR COMPETITION AGAINST ALL DEFENDANTS

125. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

126. Defendants' conduct described herein constitutes an unfair method of competition.

127. Defendants intentionally and wrongfully interfered with Lockton's relationships and contractual agreements to unfair compete, gain a competitive advantage in the marketplace, and otherwise cause harm to Lockton.

128. Defendants' conduct interfered with and continues to interfere with Lockton's ability to conduct its business.

26

129. Gould and Scardino had access to Lockton's Confidential Information, including its trade secrets, through their ownership of Lockton.

130. Upon information and belief, Gould and Scardino used Lockton's Confidential Information, including its trade secrets, for their own personal gain through their affiliation with Willis. As such, Defendants are now using such information to unfairly compete with Lockton.

131. Defendants' conduct constitutes a misuse of Lockton's Confidential Information, including its trade secrets, to the detriment of Lockton.

132. As a direct and proximate result of Defendants' conduct as described herein, Lockton has suffered and will continue to suffer irreparable harm and damages.

133. As a direct and proximate result of the wrongful conduct of Defendants, Lockton has been irreparably harmed and will continue to be irreparably harmed through the loss of established Lockton's clients, goodwill, revenues, and profits; and diminution in the value of its business.

134. Although the full extent of Defendants' actions and resulting damages are unknown, Defendants' unfair competition has caused and will cause jeopardy to and/or loss of Lockton's existing and future business and customer relationships and contracts with its customers and loss of goodwill, customer confidence, competitive advantage, confidential business information, and damage to Lockton's reputation.

## COUNT VII
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

135. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

136. Defendants have used and benefited from, and continues to use and benefit from, Lockton's Confidential Information that they had access to through Gould and Scardino's ownership of Lockton.

137. As a proximate result of Defendants' conduct described herein, Defendants have gained an unfair economic advantage over Lockton and received other financial benefits, including, but not limited to, profit, goodwill, and business development.

138. Defendants have therefore unjustly gained and retained the benefits related to Lockton's clients and Confidential Information, all to the detriment of Lockton.

139. Defendants' continued unjust retention of and benefit from Lockton's relationships with clients, as well as Lockton's Confidential Information, will continue to cause Lockton to suffer irreparable harm and damage in an amount not yet known.

140. Monetary damages alone are inadequate to remedy the harm Lockton has suffered and will continue to suffer in the absence injunctive relief.

141. The retention of these benefits by Defendants under the circumstances are inequitable and, therefore, Defendants should be required to disgorge its wrongful gains.

### COUNT VIII
### TORTIOUS INTERFERENCE WITH CONTRACT AGAINST WILLIS

142. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

143. Gould entered into Operating Agreements and a Member Agreement with Lockton.

144. Scardino entered into Operating Agreements, a Member Agreement, and a Producer Agreement with Lockton.

145. The Operating Agreements are valid and enforceable contracts that require Gould and Scardino provide 30 days' written notice of termination of their membership in Lockton.

28

146.    The Member Agreements are valid and enforceable contracts that prohibits Gould from (i) from disclosing or misusing Lockton's Confidential Information; (ii) prohibit Defendants from using the confidential information they acquired as Lockton Producer Members to solicit, recruit, hire, or attempt to solicit, recruit, or persuade Lockton employees to resign from Lockton; (iii) soliciting, or servicing or doing business with, certain Customer Accounts during their membership with the Series and for a period of two years after. Pursuant to the Member Agreements, Gould and Scardino must also return any Confidential Information immediately upon their termination.

147.    The Partner Agreement is a valid and enforceable contract that prohibits Scardino from (i) disclosing information about Customer Accounts and disclosing other Confidential Information;(ii) prohibit Defendants from using the confidential information they acquired as Lockton Producer Members to solicit, recruit, hire, or attempt to solicit, recruit, or persuade Lockton employees to resign from Lockton; (iii) soliciting, or attempting to solicit, directly or indirectly, the Series' Customer Accounts to move their business; and (iv) accepting or servicing the Series' Customer Accounts who have moved their business.    The Partner Agreement also extends Scardino's non-solicitation provisions to a four-year period following the termination of his partnership.

148.    Willis was, or should have been, aware of the existence of the agreements between Lockton and Gould.

149.    Willis was, or should have been, aware of the existence of the agreements between Lockton and Scardino.

150. By hiring Gould and Scardino, Willis intentionally interfered with their agreements with Lockton and induced and/or encouraged Gould and Scardino's violations of their agreements with Lockton.

151. As a direct and proximate result of the actions of Willis, Lockton has sustained damages.

**COUNT IX**
**DECLARATORY JUDGMENT AGAINST ALL DEFENDANTS**

152. Lockton incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

153. Given that they have resigned "effective immediately," Defendants have effectively taken the position that they have no continuing obligations to Lockton, do not intend to honor their 30-day notice period, and intend to begin working at Willis immediately.

154. There exists an actual, justiciable controversy between Lockton and Defendants relating to their legal rights, duties, and obligations under the notice-of-termination provisions of the Agreements that is ripe for adjudication.

155. Declaratory relief will resolve the legal issues between the parties regarding the enforceability of the notice-of-termination provisions of the Agreements.

156. Lockton thus requests a judgment declaring the rights and obligations of the parties under the Agreements and that the notice-of-termination provisions contained therein are lawful and enforceable.

**PRAYER FOR RELIEF**

Wherefore, Lockton prays for an order of this Court:

(a) Declaring that Defendants Gould and Scardino have: (i) misappropriated Lockton's trade secrets; (ii) breached the Series Member Agreements, Partner Agreement, and

30

Operating Agreements; (iii) interfered with Lockton's prospective economic advantage and prospective business relationships; (iv) breached fiduciary duties and/or duties of loyalty; (v) conspired among themselves; and (vi) been unjustly enriched by their conduct alleged herein;

(b) Declaring that Defendant Willis has: (i) misappropriated Lockton's trade secrets; (ii) interfered with Lockton's prospective economic advantage and prospective business relationships; (iii) conspired with the other Defendants; (iv) interfered with Lockton's contracts with Gould and Scardino; and (v) been unjustly enriched by its conduct alleged herein;

(c) Declaring the rights and obligations of the parties under the Agreements and that the notice-of-termination provisions contained therein are lawful and enforceable;

(d) Ordering that Defendants pay to Lockton all damages sustained by Lockton arising from the foregoing misconduct;

(e) Ordering that Defendants account to Lockton for all gains, profits, and other advantages unjustly obtained by Defendants as a result of their wrongful acts;

(f) Ordering that Defendants account to Lockton for a reasonable royalty for their misappropriation of trade secrets;

(g) Ordering that Defendants provide an accounting to Lockton of any and all trade secrets and other confidential and proprietary information that has been used or disclosed to any person or entity;

(h) Awarding exemplary damages as authorized by the Missouri Uniform Trade Secrets Act and/or the Defend Trade Secrets Act for the willful and malicious misappropriation of Lockton's trade secrets;

(i) Issuing an injunction: (i) enjoining Defendants from joining Willis or another competitor of Lockton until the 30 days' notice period expires; (ii) enjoining Defendants

from directly or indirectly: (1) maintaining, possessing, using, disclosing, or providing to any third party Lockton's Confidential Information; (2) using Lockton's Confidential Information to solicit or render services to Customer Accounts; (3) violating their duties to, and non-solicitation and related obligations and confidentiality agreements with, Lockton; (4) using the confidential information they acquired as Lockton Producer Members to solicit, induce, persuade, or encourage (or attempting to do same) any Lockton employee from resigning their employment from Lockton ;(5) soliciting, inducing, persuading, or encouraging (or attempting to do same) any of the restricted Customer Accounts described in the Member Agreements or Partner Agreement to reduce, terminate, or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series, Lockton Partners, or any other Lockton Series affiliate, for two years (Gould) or four years (Scardino) after any sale of their Producer Unit; and (6) accepting, servicing, or working on any competitive business from any of the Customer Accounts that Defendants may not solicit under the Agreements, or in any way doing business with any of the Customer Accounts that Defendants may not solicit under the Agreements to the extent such business is the same or substantially similar to that provided by the Series, Lockton Partners, or any other Lockton Series or affiliate, for two years (Gould) or four years (Scardino) after any sale of their Producer Unit, as applicable; and (iii) ordering that Defendants (1) account for all Lockton's Confidential Information that Defendants misappropriated; (2) return to Lockton all of Lockton's Confidential Information in their possession, custody, and control; (3) certify in writing and under the penalties of perjury, after returning Lockton's Confidential Information, that all paper and electronic copies of all Lockton's Confidential Information in their possession, custody, or control has been returned and, if electronic, upon resolution of these proceedings, has been permanently deleted from any location

where they has been stored; (4) provide an accounting for any products, plans, services, contracts, or other materials that involve or rely on any of Lockton's Confidential Information and for any business obtained by Defendants as a consequence of their unlawful actions;

(j)　　Awarding all of the costs and attorneys' fees Lockton has incurred in connection with this action; and

(k)　　Awarding such other and further relief as this Court deems just and proper.

Respectfully submitted,

POLSINELLI PC

Eric E. Packel (MO #44632)
Emma R. Schuering (MO #65169)
Ross T. Weimer (MO #69421)
900 W. 48th Place, Suite 1900
Kansas City, MO 64112
Phone: 816-753-1000
Fax: 816-753-1536
epackel@polsinelli.com
eschuering@polsinelli.com
rweimer@polsinelli.com

BRYAN CAVE LEIGHTON PAISNER LLP

By: *Robert J. Hoffman*
Robert J. Hoffman MO #44486
Jennifer L. Berhorst MO #61784
Sarah R. Holdmeyer MO #69140
1200 Main Street, Suite 3800
Kansas City, MO 64105
(816) 374-3203 (telephone)
(816) 374-3300 (facsimile)
rjhoffman@bclplaw.com
jennifer.berhorst@bclplaw.com
sarah.holdmeyer@bclplaw.com

*Attorneys for Plaintiffs*