IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LOCKTON COMPANIES, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:23-cv-00717-DGK |
| | ) |
| WILLIS AMERICAS | ) |
| ADMINISTRATION, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION TO DISMISS**

This case arises from former employment relationships between an insurance brokerage and past co-owners. Lockton Companies, LLC, Lockton Partners, LLC, The Texas Series of Lockton Companies, LLC, and The Lockton-Dunning Series of Lockton Companies, LLC (collectively, "Lockton") allege Kenneth Gould and Frank Scardino ("Individual Defendants"), and Willis Americas Administration, Inc. ("Willis") misappropriated confidential information in violation of the Missouri Uniform Trade Secrets Act[1] ("MUTSA"), the Defend Trade Secrets Act[2] ("DTSA"), interfered with Lockton's business relationships, and breached other contractual and fiduciary obligations. This is one of several cases brought by Lockton against former employees and competitors currently pending in the Western District of Missouri.

Now before the Court is Individual Defendants' motion to dismiss eight counts from Lockton's Second Amended Complaint ("SAC"). ECF No. 26. For the reasons discussed below, the motion is DENIED.

---

[1] Mo. Rev. Stat. §§ 417.450–417.467.
[2] 18 U.S.C. §§ 1831–1839.

## Standard

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (citations and internal quotations omitted). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Iqbal*, 556 U.S. at 678.

## Background

Lockton Companies is series limited liability company and includes the Texas Series and the Lockton Dunning Series (collectively, "the Series"). Lockton Partners is a limited liability company and holds operating interests in all Lockton entities. Willis is one of Lockton's competitors in the insurance brokerage and consulting services sector. Kenneth Gould was an owner and Producer Member of the Series and is currently working for Willis as the Strategic Client Engagement Leader. Frank Scardino was an owner and Producer Member of the Series, and an owner and Producer Partner of Lockton Partners, and is currently working for Willis as the

North American Strategic Sales Leader.

As part of Individual Defendants employment with Lockton, they allegedly entered into various contractual agreements. These agreements set forth the rights and obligations of the parties. First, Individual Defendants were allegedly bound by the Series Member Agreement. This agreement prohibited them from (1) disclosing or misusing the Series' confidential information, (2) soliciting Lockton employees and members to resign for a period of two years after terminating their membership, and (3) soliciting Series' customers during their membership with the Series and for a period of two years after terminating their membership.

Second, Individual Defendants were allegedly bound by the Series Operating Agreement. The SAC identifies two versions of this agreement: (1) the "Second Amended and Restated Operating Agreement of Lockton Companies, LLC and each of its Series" ("Prior Series Operating Agreement"); and (2) the "Third Amended and Restated Operating Agreement of Lockton Companies, LLC and each of its Series" ("Current Series Operating Agreement"). SAC ¶¶ 27–28. Both versions allegedly included a termination provision requiring Series members, including Individual Defendants, to provide thirty days written notice before terminating their membership. Further, the agreement cross references the Series Member Agreement's prohibition against soliciting Lockton employees or customers and from disclosing or misusing Lockton's confidential information.

Third, Scardino was allegedly bound by Lockton Partners, LLC's Partner Agreement. This agreement cross references the Series Member Agreement's prohibition against soliciting Lockton employees or customers and from disclosing or misusing Lockton's confidential information.

Lockton alleges Individual Defendants breached these agreements as well as numerous statutory and fiduciary obligations. Specifically, Lockton states Individual Defendants terminated

3

their membership without providing thirty days written notice and immediately began working for Willis. Lockton alleges Scardino sent his termination notice "from an unfamiliar Gmail account and without any subject line . . . [which] was certain to be quarantined from receipt." SAC ¶ 7. Lockton claims Scardino did so to delay receipt of his termination so he could begin working at Willis before Lockton knew he had left.

Lockton alleges Gould solicited Lockton customers and disclosed confidential information when he brought a Willis employee to a meeting with a Lockton client. Further, Lockton's allegations suggest Scardino solicited Lockton employees because "two Texas Series associates, both of whom worked closely with Scardino, also resigned from Lockton" the day after Scardino. *Id.* ¶ 9.

Lockton asserts nine counts against all Defendants: (1) Misappropriation of trade secrets; (2) breach of contract; (3) tortious interference with business relationships; (4) breach of fiduciary duties; (5) civil conspiracy; (6) unfair competition; (7) unjust enrichment; (8) tortious interference with contract (Willis only); (9) and declaratory judgment. Individual Defendants move to dismiss the eight counts brought against them pursuant to Federal Rule of Civil procedure 12(b)(6).

**Discussion**

Individual Defendants argue Lockton's claims should be dismissed because it "relies on vague and conclusory allegations . . . which merely recite the barebones elements for its claims." Suggestions in Supp. at 1, ECF No. 27. Lockton contends each of the challenged counts plausibly state a claim for relief. The Court addresses each turn.

I. **Lockton states a claim for misappropriation of trades secrets and unfair competition under Counts I and IV.**

Individual Defendants argue Lockton fails to state a claim for misappropriation of trade secrets or unfair competition because it has not clearly identified the confidential information

considered to be trade secrets or alleged facts demonstrating misappropriation. This argument is unpersuasive.

To demonstrate misappropriation of trade secrets, Lockton "must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *Ahern Rentals, Inc.*, 59 F.4th at 955. Individual Defendants state Lockton's unfair competition claim is analyzed under the same standard. *See* Suggestions in Supp. at 4 n.4 (citing *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 855 (8th Cir. 2020)). As such, the Court analyzes Counts I and IV together and finds Lockton sufficiently alleges both claims.

### a. Lockton sufficiently alleges a protectable trade secret.

Individual Defendants argue Lockton does not "clearly identify the information it considers to be a trade secret." Suggestions in Supp. at 4 (internal quotations omitted).

A "trade secret" is information "the owner thereof has taken reasonable measures to keep such information secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *see also* Mo. Rev. Stat. § 417.453(4). Lockton's alleged trade secrets meets this definition.

Lockton alleges Individual Defendants had access to "Confidential Information" and trade secrets including "customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers." SAC ¶¶ 45, 82. These categories of information clearly have economic value, *see id.* ¶¶ 3, 81–82, and Lockton took steps to protect this information from disclosure and misuse through its contractual agreements with Individual Defendants, *see id.* ¶¶

5

48, 51, 56, 84–86. Thus, Lockton plausibly alleges a protectable trade secret.

### b. Lockton sufficiently alleges misappropriation.

Individual Defendants argue Lockton "has not sufficiently alleged facts to show misappropriation" and "fail[s] to connect what, how, and/or when any trade secrets were allegedly appropriated." Suggestions in Supp. at 5. This argument is unpersuasive.

"Misappropriation" requires the "disclosure or use of a trade secret of another without express or implied consent" by someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(III); *see also* Mo. Rev. Stat. § 417.453(2).

Lockton alleges Defendant Gould "divert[ed] Lockton's Confidential Information and trade secrets" when he "invit[ed] another Willis employee to a meeting with a Lockton client." SAC ¶¶ 10, 89. Lockton alleges Scardino sent his termination notice in a manner "designed to ensure Lockton would be delayed in receiving it. . . . [and] immediately began working Willis" before Lockton knew of his departure. *Id.* ¶ 7. Further, Lockton alleges on information and belief that Individual Defendants misappropriated Plaintiffs' trade secrets to: (1) "use such Confidential Information on behalf of Willis," (2) "solicit business from Lockton's current and prospective Customer Accounts," and (3) "contact Lockton clients to induce their movement to Willis." *See id.* ¶¶ 87–88, 90. Taken together, it is plausible Individual Defendants misused or disclosed Lockton's confidential information. This is especially true considering Individual Defendants would be in "sole possession and control" of evidence supporting many of these allegations. *See Ahern Rentals, Inc.*, 59 F.4th at 955.

Further, Lockton alleges Individual Defendants were bound by various contractual agreements that included limits on the use and disclosure of its confidential information. These

6

allegations are sufficient to show Individual Defendants knew or should have known they had a duty to maintain the secrecy of Lockton's confidential information.

Accordingly, Lockton sufficiently states a claim for misappropriation of trades secrets under Count I and unfair competition under Count IV.

## II. Lockton states a claim for breach of contract under Count II.

Individual Defendants argue Lockton fails to state claims for breach of contract because (1) the Current Series Operating Agreement is unenforceable, and (2) Lockton otherwise fails to plead specific facts showing a breach of the Series Member Agreement or Partner Agreement. These arguments are unavailing.

To state a claim for breach of contract under Missouri law, Lockton "must establish the existence of a valid contract, the rights of the plaintiff and obligations of defendant under the contract, breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (citation omitted). Lockton plausible alleges each element for the respective agreements.

### a. Series Operating Agreement.

Individual Defendants argue the Current Series Operating Agreement is unenforceable because Lockton unilaterally amended the Prior Series Operating Agreement without the approval of each Series Producer Member. *See* Suggestion in Supp. at 7–9. Lockton alleges it "amended and restated [the Prior Series Operating Agreement] to clarify minor ambiguities" such that "approval of each Series Producer Member was not required." SAC ¶ 28. Further, Lockton contends that even if the Current Series Operating Agreement is unenforceable, Individual Defendants would still be bound by the Prior Series Operating Agreement to which they assented, and which allegedly includes the thirty-day notice requirement. *See* Suggestions in Opp'n at 9.

For purposes of this motion, the Court finds Lockton sufficiently alleges the existence of a

7

Case 4:23-cv-00717-DGK   Document 41   Filed 03/27/24   Page 7 of 12

valid contract and a thirty-day written notice requirement. Lockton alleges Individual Defendants breached this obligation when they failed to provide the requisite notice before beginning their employment with Willis resulting in damages. *See id.* ¶¶ 4, 6–7, 102(a), 103.

Accordingly, Lockton sufficiently states a claim for breach of the Series Operating Agreement under Count II.

### b. Series Member Agreement and Partner Agreement.

Individual Defendants argue Lockton fails to provide any specific details regarding "when and how" the Series Member and Partner Agreements were breached. Suggestions in Supp. at 10. That is, Lockton does not identify "the specific employees or customers who were allegedly solicited, [and] the specific confidential information that was taken or disclosed." *Id.* This argument is unpersuasive.

Lockton pleads the existence of multiple valid contracts including the Series Member Agreement and Partner Agreement. These agreements describe the rights of the parties and Individual Defendants' obligations both during and after their employment with Lockton. Specifically, these agreements prohibited Individual Defendants from misusing Lockton's confidential information and soliciting Lockton's employees or customers. SAC ¶¶ 48–50, 59–62. Lockton plausibly alleges Individual Defendants breached these obligations by soliciting customers and/or employees and misusing confidential information resulting in damages. *See id.* ¶¶ 9, 10, 89, 102–03.

Accordingly, Lockton sufficiently states a claim for breach of the Series Member Agreement and Partner Agreement under Count II.

### III. Lockton states a claim for tortious interference under Count III.

Individual Defendants argue Lockton fails to state a claim for tortious interference because it does not "identify a single customer with whom it had a valid business relationship" or "establish

that any client has actually been diverted." Suggestions in Supp. at 12. Again, this argument is unavailing.

To state a claim for tortious interference under Missouri law, Lockton must establish: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012) (en banc). Individual Defendants challenge only the first and fifth elements. Lockton plausibly alleges both.

Lockton alleges it "continuously engaged in discussion with current customers about potential future business opportunities. . . . [had] active discussion with potential customers to solicit their business. . . . [and was] reasonably likely to secure these business opportunities." SAC ¶ 105. This is sufficient to allege a valid business expectancy. Further, Lockton alleges Individual Defendants interfered with these relationships by soliciting its customers resulting in damages.

Accordingly, Lockton sufficiently states a claim for tortious interference under Count III.[3]

### IV.  Lockton states a claim for breach of fiduciary duties under Count IV.

Individual Defendants argue Lockton fails to state a claim for breach of fiduciary duties because it does not answer the "critical who, when, where, what, and how questions." Suggestions in Supp. at 13. This argument is unpersuasive.

---

[3] Individual Defendants also argue the MUTSA preempts Lockton's tortious interference claim (as well as its civil conspiracy, and unjust enrichment claims). As support, Individual Defendants cite only Mo. Rev. Stat. § 417.463(1) and a single case in a footnote without explanation. *See* Suggestion in Supp. at 12 n.11, 14, 15. But Individual Defendants fail to establish the basis or scope of any preemption, and the Court will not construct legal arguments for them. *See United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) ("It is not this court's job to research the law to support an appellant's argument." (cleaned up)); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)). Accordingly, the Court will not dismiss Lockton's tortious interference, civil conspiracy, and unjust enrichment claims on preemption grounds.

"In Missouri, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." *Lafarge N. Am., Inc. v. Discovery Grp. LLC*, 574 F.3d 973, 983 (8th Cir. 2009). Lockton sufficiently alleges each element.

As Producer Members and a Producer Partner respectively, Individual Defendants were co-owners and thus owed fiduciary duties to Lockton. *See also* SAC ¶¶ 1, 110. For the reasons discussed above, Lockton plausibly alleges these duties were breached when Individual Defendants failed to provide thirty-days' written notice, solicited customers and/or employees, and misused confidential information. These allegations adequately plead causation and draw an inference of harm.

Accordingly, Lockton sufficiently states a claim for breach of fiduciary duties and/or loyalty under Count IV.

### V. Lockton states a claim for civil conspiracy under Count V.

Individual Defendants argue Lockton fails to state a claim for civil conspiracy because (1) it is not an independent cause of action, (2) the underlying tort claims fail, and (3) there are no facts alleging a meeting of the minds between them and Willis. Again, these arguments are unpersuasive.

To state a claim for civil conspiracy under Missouri law, Lockton must show: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [Lockton] was thereby damaged." *W. Blue Print Co., LLC*, 367 S.W.3d at 22. Individual Defendants challenge only the third element.

First, civil conspiracy is an independent cause of action so long as the underlying torts are sufficiently pled. Thus, because Lockton has sufficiently pled multiple underlying torts, its civil conspiracy claim is also properly plead as an independent cause of action.

10

Second, when alleging a meeting of the minds, "upon-information-and-belief allegations of the coordination between [Defendants] are sufficient to state a claim for relief." *Ahern Rentals, Inc.*, 59 F.4th at 957. Thus, contrary to Individual Defendants' argument, Lockton adequately alleges a meeting of the minds with Willis under the third element.

Accordingly, Lockton sufficiently states a claim for civil conspiracy under Count V.

## VI. Lockton states a claim for unjust enrichment under Count VI.

Individual Defendants argue Lockton's unjust enrichment claim fails "for the same reasons all of Lockton's other claims fail, specifically, failure to plead with sufficient facts." Suggestions in Supp. at 15. But Individual Defendants provide no explanation as to why the facts are insufficient. In fact, Individual Defendants dedicate only a single sentence to this argument. *Id.*

Accordingly, the Court will not dismiss Lockton's unjust enrichment claim based on Individual Defendants' unsupported and conclusory argument.

## VII. Declaratory judgment under Count VI.

Lockton seeks a judgment declaring the rights and obligations of the parties under the various agreements including the enforceability of the thirty-days written notice requirement. Individual Defendants argue this claim should be dismissed because declaratory judgement is not an independent cause of action.

While declaratory judgement is remedial in nature, dismissal is improper where there is "a viable underlying cause of action." *Farm J., Inc. v. Johnson*, No. 19-CV-00095-SRB, 2019 WL 1795945, at *5 (W.D. Mo. Apr. 24, 2019). As discussed above, Lockton sufficiently alleged the existence of multiple valid contracts and the breach of those contracts. Thus, Lockton's request for declaratory relief is supported by a viable claim.

Accordingly, Lockton sufficiently states a claim for declaratory relief under Count IX.

## Conclusion

For the foregoing reasons, Individual Defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Date:   March 27, 2024            /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT